IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| | | |
|---|---|---|
| SHANNON PATRICIA KOVACH, | ) | CASE NO. 1:19-CV-01981 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| v. | ) | |
| | ) | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## **Introduction**

Before me[1] is the action by Shannon Patricia Kovach seeking judicial review of the August 2018 decision of the Commissioner of Social Security that denied Kovach's 2015 application for disability insurance benefits.[2] The Commissioner has answered[3] and filed a transcript of the administrative proceedings.[4] As provided in my initial[5] and pre-trial order,[6]

---

[1] With the approval of the district judge, the parties have consented to my jurisdiction. ECF No. 23.
[2] ECF No. 1.
[3] ECF No. 9.
[4] ECF No. 10.
[5] ECF No. 6.
[6] ECF No. 11.

1

as modified,[7] the parties have briefed their positions,[8] filed fact sheets[9] and charts,[10] and participated in a telephonic oral argument.[11]

For the following reasons, the decision of the Commissioner will be affirmed in part and reversed in part, with the matter remanded.

## Facts

The relevant facts are briefly stated. Kovach, who was born in 1982 and so is a younger individual according to the regulations,[12] previously worked in jobs ranging from skilled to unskilled[13] but has not worked since October 2013 – the alleged onset date[14] – when she suffered a seizure,[15] for which no causative diagnosis was given at the time.[16] The record shows that between the 2013 seizure and the 2018 hearing Kovach, who exhibited symptoms of headaches, depression and stress, consulted various medical providers and received different assessments and treatments, culminating in a 2017 diagnosis of psychogenic non-epilepsy seizures by a neurologist at the Cleveland Clinic.[17]

---

[7] Non-document order entered November 26, 2019, non-document order entered January 16, 2020, non-document order entered February 14, 2020.
[8] ECF Nos. 13, 15 (Kovach), 18 (Commissioner), No. 19 (Kovach reply).
[9] ECF No. 14 (Kovach).
[10] ECF No. 18, Attachment 1 (Commissioner).
[11] ECF No. 26.
[12] Tr. at 23.
[13] *Id.*
[14] *Id.* at 17.
[15] *Id.* at 277.
[16] *Id.* at 280.
[17] ECF No. 15 at 2-8.

The ALJ found that Kovach had severe impairments of psychogenic non-epileptic seizures and post-traumatic stress disorder.[18] He also specifically found that no impairment or combination of impairments met or medically equaled a listing.[19] In that regard he noted that Kovach's mental impairment does not meet or equal the paragraph "B" criteria of Listing 12.15, finding that any limitation was only "moderate" in each area of functioning.[20]

In formulating Kovach's RFC, the ALJ considered the medical record previously mentioned,[21] as well as Kovach's activities of daily living and her testimony at the hearing.[22] He also gave great weight to an opinion from a state agency reviewer who had neither seen the entire record nor Kovach, as well great weight to the opinion of a consultative examiner and to a treating source who had earlier treated Kovach for epilepsy.[23] However, the ALJ gave only little weight to the opinion of Dr. Jessica Fesler, the Cleveland Clinic neurologist who provided the ultimate diagnosis and who was acknowledged as a treating source.[24]

From this, the ALJ concluded that she had an RFC for light work, except that she cannot work around heights or machinery, but she could avoid normal workplace hazards such as boxes on the floor, doors ajar, or approaching people or vehicles. She could never

---

[18] Tr. at 17.
[19] *Id*. at 18.
[20] *Id.*
[21] *Id*. at 20-21.
[22] *Id*. at 20.
[23] *Id*. at 21-22.
[24] *Id*. at 22.

operate a vehicle during a workday and she must avoid concentrated exposure to dust, fumes, odors or gases, as well as poorly ventilated areas and extreme heat, cold or humidity. She cannot perform a production rate pace but could perform goal-oriented work. She is limited to occasional, casual interaction with small groups of co-workers and to simple, routine and repetitive tasks. She can tolerate few changes in a routine work setting and when changes occur they need to take place gradually and happen infrequently.[25]

Finally, with the assistance of testimony by a VE, the ALJ concluded that there were sufficient numbers of three jobs at the light, unskilled level that Kovach could perform.[26] Thus, her claim was denied.[27]

## **Issues**

Kovach raises issues as to (1) whether the ALJ properly evaluated and weighed the opinion of Dr. Fesler; (2) whether the ALJ's decision regarding Kovach's credibility as to the effects of her symptoms was supported by substantial evidence; and (3) whether the Commissioner met his burden at Step Five in demonstrating the existence of sufficient jobs related to her RFC.[28]

As will be developed below, the first issue is decisive and will be addressed.

---

[25] *Id*. at 19.
[26] *Id*. at 24.
[27] *Id.*
[28] ECF No. 15 at 1.

**Discussion**

As was stated above, the record plainly shows that the correct diagnosis of Kovach's condition was not made until she saw Dr. Fesler at the Cleveland Clinic. That diagnosis rests, in substantial part, on the objective evidence of a three-day diagnostic procedure that produced a video-EEG.[29] From that record, as well as from her correct diagnosis and nearly a year of treating Kovach, Dr. Fesler submitted a through, four-page opinion that reviews the details of the seizures, their frequency, their symptoms and their triggers, including, specifically, stress and exertion at work.[30] From that medical premise, Dr. Fesler gave opinions as to how Kovach would fare as to particular work-related issues.[31]

Dr. Fesler made a point of documenting that the seizures, which occur once or twice a week, can be convulsive, with loss of consciousness and give Kovach only a brief warning of 20 minutes before onset.[32] She also specifically noted that the seizure itself results in Kovach's face "locking up and [with] and inability to use or move, confused, speech difficulty, immobility, can't move entire body for 2 hours."[33] Dr. Fesler also stated that there is "no medical treatment for this condition" but that the effects of the seizures could be somewhat mitigated with "cognitive behavioral therapy."[34] Furthermore, Dr. Fesler mentioned several times that because the seizures happen frequently and with short

---

[29] Tr. at 938.
[30] *Id*. at 1238-41.
[31] *Id.*
[32] *Id*.
[33] *Id*. at 1238.
[34] *Id*. at 1240.

5

notice, any firm, quantified opinion as to Kovach's ability to perform various work functions would necessarily be "unreliable," "unpredictable" and "variable."[35]

In assigning only "little weight" to Dr. Fesler's opinion, the ALJ largely relied on what he claimed were contradictory clinical findings of things like normal cranial nerves, normal motor strength and sensation, no tremor and normal cognition.[36] What all of these clinical findings completely fail to address is the fact that Kovach's disability is episodic and not continuous. It is not contradictory to find clinical tests showing that Kovach has normal motor strength when not in the grip of a seizure but also to find, as did Dr. Fesler, that she was "immobile" with an inability to move her whole body for periods of two hours during a seizure.[37]

Simply put, the reasons for downgrading the functional opinion of Dr. Fesler, an acknowledged treating source, are not good reasons and are not supported by the substantial evidence of the diagnosis itself (which the ALJ fully accepted) that deals with the documented effects of a frequent recurring event and not the continuous existence of a permanent condition.

That said, before Dr. Fesler's testing and diagnosis there is no evidence in the record of what Kovach was actually suffering from. As noted, she was suspected of having a

---

[35] Id. at 1240-41.
[36] *Id*. at 22.
[37] This also explains the opinions of the state agency physicians who were reviewing findings taken while Kovach was not undergoing a seizure. Those opinions were also given before Kovach had been accurately diagnosed and so such diagnosis was not before the state agency physicians.

number of underlying causes, but none of the them were definitively established. Here, the state of the evidence of record prior to Dr. Fesler does seem to support the opinions of the state agency physicians, which, as the ALJ states, mostly track the contours of the RFC. But the findings and functional opinions of Dr. Fesler provide an entirely new factual ground that is inconsistent with the prior findings.

Because the question of how Dr. Fesler's opinion was treated proved decisive, the remaining issues raised by Kovach are not addressed. That decision to not address these issues here should not be construed as stating an opinion as to their worthiness for future consideration on remand.

## **Conclusion**

Accordingly, I find that the decision of the Commissioner is affirmed for the period from the date of onset until date of the diagnosis of Dr. Fesler and reversed for the period subsequent to that diagnosis. The matter is remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: September 23, 2020                      s/William H. Baughman Jr.
                                                                                         United States Magistrate Judge